# PECHMAN LAW GROUP PLLC
### ATTORNEYS AT LAW

488 MADISON AVENUE
NEW YORK, NEW YORK 10022
(212) 583-9500
WWW.PECHMANLAW.COM

February 16, 2017

**VIA ECF**

The Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Francisco Cortes v. Antioquena Dos Bakery Corp., et al.*
      16 Civ. 2740 (VMS)

Dear Judge Scanlon:

  This joint letter is submitted on behalf of Plaintiff Francisco Cortes ("Plaintiff" or "Cortes") and Defendants Antioquena Dos Bakery Corp. d/b/a La Antioqueña and Rocio Rico (collectively, "Defendants") (together with Plaintiff, the "Parties") in the above-referenced matter. As per Your Honor's Order dated January 30, 2017, the parties submit this joint letter seeking Court approval of the Settlement Agreement and Release codifying the terms the parties agreed to in settling this matter, attached hereto as Exhibit 1 (the "Agreement").

## PROCEDURAL BACKGROUND

  This case was originally filed on May 31, 2016, asserting claims against Defendants to recover unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA"), and the New York Labor Law § 190, et seq. ("NYLL"). Plaintiff also sought liquidated damages, statutory damages, interest, and attorneys' fees and costs under the NYLL.

  Following the exchange of paper discovery, the Parties negotiated and participated in a Court ordered mediation on January 18, 2017, led by mediator Elena Paraskevas-Thadani. At the mediation, the Parties resolved their dispute and recorded their agreement in principle on a signed memorandum of agreement. Since then, the Parties referred this matter to your Honor for all purposes, drafted and executed the Settlement Agreement, and prepared this letter for settlement approval.

## FACTUAL ALLEGATIONS

Plaintiff's overtime pay claims arise from allegations that Defendants improperly paid Plaintiff a fixed weekly salary. Plaintiff states that he was only paid for forty hours of work per week, though he regularly worked overtime. From 2009 through August 2015, Plaintiff alleges that he regularly worked from approximately 8:00 a.m. to 4:00 p.m., six days per week, for a total of about forty-eight hours of work per workweek. During this time, he claims he was paid $550.00 per week, regardless of the exact number of hours he worked. From October 2015 through May 10, 2016, Plaintiff alleges he regularly worked six days per week, for a total of approximately fifty-four hours of work per workweek. During this time, he claims he was paid $520.00 per week, regardless of the exact number of hours he worked. Plaintiff was paid in cash and was not given proper wage statements or wage notices, as per the requirements of the Wage Theft Prevention Act.

## SETTLEMENT AGREEMENT

The Settlement Agreement requires Defendants to pay Plaintiff $45,000.00 ("the Settlement Sum") to resolve the case, but without any admission of liability. After attorneys' fees and expenses, Plaintiff will receive payment of $29,073.00 of the total Settlement Sum.

Pursuant to the Settlement Agreement, Defendants will pay the Settlement Sum by December 31, 2017 in ten payments: one initial payment of $20,000, due on March 1, 2017, followed by nine monthly payments of $2,777.78. In light of the extended payout period, Defendants have executed an Affidavit of Confession of Judgment to be entered in the event of default. Defendants agree to authorize judgment in the amount of $67,000.00, representing a $22,000.00 penalty for failure to make timely payments.

The Parties also agreed to a mutual release of wage and hour claims. Notably, Plaintiff no longer works for Defendants and has represented that he has no knowledge of any additional potential claims that he has against Defendants.

## ARGUMENT

### THE COURT SHOULD APPROVE THE SETTLEMENT OF PLAINTIFF'S FLSA CLAIMS AS FAIR AND REASONABLE AND DISMISS THE ACTION WITH PREJUDICE

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), provides that stipulated dismissals settling FLSA claims with prejudice require the approval of a United States District Court or the Department of Labor. 796 F.3d at 200. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." *Martinez v. Hilton Hotels Corp.*, No. 10 Civ. 7688 (JLC), 2013 WL 4427917, at *2 (S.D.N.Y. Aug. 20, 2013) (quoting *Garcia v. Bae Cleaners Inc.*, No. 10 Civ. 7804 (KBF), 2012 WL 1267844, at *1 (S.D.N.Y. Apr. 12, 2012)). Courts in the Second Circuit consider the totality of the

circumstances, including the following factors, when determining whether a proposed settlement is fair and reasonable:

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotations omitted). The Parties believe the settlement here is fair and reasonable under these factors, as is further explained below. The factors set forth in the Court's order dated January 30, 2017 are addressed as well.

I. **Plaintiff's Estimate of the Full Anticipated Recovery if Plaintiff Had Received a Favorable Outcome at Trial**

Plaintiff's Counsel calculates Plaintiff's highest possible damages to be $124,963.89[1] based on the allegations in the Complaint. However, the settlement amount of $45,000.00 is fair and reasonable in light of the numerous litigation risks discussed below. In this regard, the $124,963.89 figure represents a complete victory for Plaintiff, with favorable findings of fact and conclusions of law for every one of their claims. Should the Court reject Plaintiff's allegations regarding the hours that he worked or his understanding about his pay, Plaintiff's damages would be significantly reduced.

Plaintiffs' total damages calculations include:
- Unpaid overtime wages: $52,764.43
- FLSA liquidated damages: $27,000.86[2]
- NYLL liquidated damages: $47,248.71
- NYLL interest: $14,950.75
- WTPA statutory damages: $10,000.00

After attorneys' fees and costs, Plaintiff will receive $29,073.00 for the release of his wage and hour claims, the equivalent of more than half of the unpaid wages he alleges he is owed. Plaintiff is happy with and has acknowledged this amount and accepts it as fair and reasonable.

---

[1] Plaintiffs originally calculated their damages to be $151,964.75, including double liquidated damages. Plaintiffs no longer seek double liquidated damages in the wake of *Chowdhury v. Hamza Express Food Corp.*, No. 15 Civ. 3142, 2016 U.S. App. LEXIS 21870, at *1 (2d Cir. Dec. 7, 2016).

[2] Plaintiff did not include FLSA liquidated damages in its calculation of full recovery, due to the *Chowdury* decision.

Hon. Vera M. Scanlon
February 16, 2017
Page 4 of 8

## II. Bona Fide Disputes and Other Issues that Support Accepting the Settlement Agreement

Defendants refute Plaintiff's claims of unpaid wages. Specifically, Defendants argue that Plaintiff did not work as many hours as he stated in the Complaint, and that for the period of October 2015 through May 10, 2016 he was actually paid at an hourly rate. Defendants argue that Plaintiff took an hour-long break every day and therefore worked six hours less per pay period than alleged by Plaintiff. Defendants also produced some time and pay logs, kept in a notebook, that seem to support their claims. The records are not complete and Plaintiff continues to assert that the information in the notebook is inaccurate. However, if this litigation were to proceed and the Court or jury credited Defendants' testimony and supporting documents, Plaintiff's damages would be significantly reduced.

An important factor in settlement negotiations was the avoidance of litigation burdens and expenses. If this case were to proceed, Parties would incur the expense of at least five depositions, including depositions of Plaintiff, Defendants, the bookkeeper and employees who worked with Plaintiff. Continuing through trial would consume significant amounts of time and resources and demand substantial judicial resources. A trial would be costly for all Parties and could lead to the depletion of the resources used to resolve this matter. Realistically, if the litigation were to proceed, Plaintiff might not be able to recover more than the present negotiated amount.

Logistically, Plaintiff could also face significant issues enforcing a judgment against Defendants should the Pending Action continue. During the mediation, Defendants' counsel represented that Defendants could not sustain a larger judgment than the negotiated amount. The Defendants are therefore in a "precarious financial condition" that raises "serious concerns about collectability." *See, e.g., Cortes v. New Creators, Inc.*, No. 15 Civ. 5680 (PAE), 2016 U.S. Dist. LEXIS 79757, at *10 (S.D.N.Y. June 20, 2016) ("In light of defendants' precarious financial condition . . . there is a substantial risk that any judgment plaintiff[] might obtain at trial would prove uncollectable."). "Case law recognizes that potential difficulty in collecting damages militates in favor of finding a settlement reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). Given the attendant risks of litigation, even though recovery could potentially be greater if Plaintiff succeeded at trial and survived appeal, this settlement allows for Plaintiff to recover a significant amount without undergoing any risks at trial.

## III. Description of Settlement Negotiations

Counsel engaged in extensive arm's length and vigorous negotiations on behalf of the Parties. The Parties' attorneys are competent and experienced in wage and hour matters. Counsel and Parties participated in an all-day mediation, lasting 8.5 hours, with an experienced neutral third party mediator during which they engaged in a vigorous exchange regarding their respective claims and defenses.

Settlement of this matter required significant expenditure of time and effort, including various discussions with Plaintiff, the creation and subsequent review and discussion of damage calculation spreadsheets, and the negotiation of the terms of the

Agreement, including the length of the payout, the installment amounts, and the Affidavit of Confession of Judgment from Defendants.

The extensive negotiations performed in this matter confirm that there was no collusion or fraud and that the Settlement Amount is the product of fair and reasonable negotiations.

**IV.    Amount of Plaintiff's Attorney's Fees and the Basis for the Claimed Amount**

In accordance with the retainer agreement signed by Plaintiff and enclosed as Exhibit 2[3] for review by Your Honor, attorneys' fees are 33.3% of the total settlement amount after reimbursements of costs. This amounts to $15,927.00, an amount that is presumptively fair. *See Matter of Lawrence*, 24 N.Y.3d 320, 339 (2d Cir. 2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."); *see also Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 U.S. Dist. LEXIS 164069 at *9 (E.D.N.Y. Nov. 19, 2014) (Garaufis, D. J.) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Shekar v. Delancey's Orchard LLC, et al.*, No. 15 Civ. 5022 (ER), ECF No. 45 (Order Granting Mot. to Approve Parties' Settlement) (S.D.N.Y. Dec. 6, 2016) ("[T]he retainer agreement between Plaintiff and Plaintiff's counsel provides for a one-third contingency fee, an amount that is 'commonly accepted in the Second Circuit in FLSA cases.'"). Furthermore, as the proposed attorneys' fees are "consistent with a commonly approved percentage, there are no opt-in plaintiffs, the case is not a [certified] collective action, and the attorney's fee award is based on an agreement between Plaintiff[s] and counsel," the fee should be approved as reasonable. *Alonso v. Le Bibloquet NY, LLC*, No. 16-CV-8448 (JMF), 2017 U.S. Dist. LEXIS 14235, at *3 (S.D.N.Y. Feb. 1, 2017).

Plaintiff first retained Counsel on May 11, 2016. *See* Exhibit 2. After several in-person and telephone discussions about the facts of the case, the Complaint was filed on May 31, 2016. Since the filing of the case, Plaintiff's Counsel has spent significant time mediating and participating in settlement negotiations with Defendants. Notably, the mediation with Ms. Paraskevas-Thadani lasted 8.5 hours and Counsel for the parties also engaged in preliminary negotiations prior to the mediation. Plaintiff's counsel has used its considerable expertise and experience to provide a satisfactory result to Plaintiff. In any event, the allocation of $15,927.00 to Plaintiffs' counsel for fees is approximately sixty-one percent of the lodestar, which currently exceeds $26,000.00. Our firm has worked on this matter without compensation of any kind to date and our fee has been wholly contingent upon the result achieved.

**V.    Reasonableness of Fee Amounts**

Here, Plaintiff's Counsel's fee request is reasonable in light of the success in settling this matter. Plaintiff's Counsel requests compensation for over 100 hours of work. The time expended was necessary to obtain the results achieved. "The hourly rates used in making a fee aware should be 'what a reasonable, paying client would be

---

[3] Please note that the retainer agreement docent signed by Plaintiff incorrectly spells his last name as Cortez, rather than Cortes.

willing to pay.'" *Mills v. Capital One*, 2015 U.S. Dist. LEXIS 133530, at *31 (citing *Arbor Hill Concerned Citizens Neighborhoods Ass'n v. Cty. of Albany*, 522 F.3d 182, 184 (2d Cir. 2007)). "In determining a reasonable hourly rate, the court should not only consider the rates approved by other cases in the District, but should also consider any evidence offered by the parties." *Farbotko v. Clinton Cty.*, 433 F.3d 204, 208-09 (2d. Cir. 2005). Unlike many other members of the FLSA Plaintiffs' Bar, Plaintiffs' Counsel regularly represents both employers and employees in wage and hour litigations in the Second Circuit. The firm's defense clients actually pay for the firm's legal services at each attorney's full hourly rate, which are the rates used to calculate the lodestar here. *See, e.g., Lora v. J.V. Car Wash, Ltd.*, 11 Civ. 9010, 2015 U.S. Dist. LEXIS 99444 at *21 ("ADK's requested rates are the amounts that [both attorneys] actually charge to their hourly-paying clients in other employment matters.").

## VI.     Plaintiff's Counsel's Qualifications

"To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Guzman v. Joesons Auto Parts*, No. 11 Civ. 4543, 2013 WL 2898154, at *3 (E.D.N.Y. June 13, 2013) (citations omitted). A court may take into consideration the quality of counsel's submissions to and work before the court, counsel's past experience litigating other, similar cases, and whether counsel "achieved a reasonable recovery" for plaintiff. *Id.* (citations omitted). Here, the $45,000.00 recovery is substantial in light of the total possible recovery. Even after taking into account attorneys' fees, service awards, and costs, Plaintiff will still receive a significant recovery, approximately fifty-six percent (56%) of his alleged back wages. This is also a significant recovery for Plaintiff considering all the disputed claims that were raised.

Pechman Law Group PLLC has substantial experience prosecuting and settling wage and hour actions and are well-versed in wage and hour law. The attorneys who represented Plaintiff in this matter are Louis Pechman and Laura Rodríguez.

Louis Pechman, the firm's principal attorney, has handled over two-hundred-fifty FLSA and NYLL cases, representing both employees and employers, including Fortune 500 corporations. He has been appointed class counsel or counsel for FLSA Collectives in several FLSA cases. *See, e.g., Carino v. Broadway & 166, LLC et al.*, No. 10 Civ. 8506, Docket No. 35 at *4 (S.D.NY. May 1, 2013) (recognizing that Louis Pechman "used his considerable expertise in this wage and hour case to achieve an excellent result for the Class in a highly efficient manner."); *In re Chickie's and Pete's Wage and Hour Litigation*, No. 12 Civ. 6820, Docket Entry No. 80 at *1 (consolidating cases and appointing Louis Pechman as lead counsel) (E.D. Pa. Mar. 28, 2013); *Duchene v. Michael Cetta, Inc. et ano*, No. 06 Civ. 4576, 2009 U.S. Dist. LEXIS 85955, at *7 (S.D.NY. Sept. 10, 2009) (recognizing Louis Pechman's "extensive experience in litigating wage and hour class actions").

Since 2010, Mr. Pechman has moderated an annual program at the New York County Lawyers' Association on "How to Handle a Wage and Hour Case." On October 6, 2015, he moderated a program at the City Bar on "Current Issues in Settlement of FLSA Cases," which included Judge Lewis A. Kaplan, Magistrate Judge Ronald L. Ellis,

and Judge Brian M. Cogan. On September 30, 2015, he moderated a Bloomberg BNA webinar entitled "Top Ten FLSA Litigation Issues: 2015 Edition," which included Magistrate Judge Ramon E. Reyes. On March 11, 2016, he spoke at the Employment Law Institute at the NYC Bar Association on a panel for a program titled, "Prosecuting & Defending Wage and Hour Cases." On September 29, 2016, he spoke on a panel that included Magistrate Judge Steven M. Gold in a Bloomberg BNA webinar titled "Top Ten FLSA Litigation Issues: 2016 Edition." On October 24, 2016, he moderated a program at the New York City Bar titled "FLSA Settlement Issues One Year After *Cheeks*," presented by a panel including Chief Magistrate Judge Debra Freeman, District Judge Richard Sullivan, and Magistrate Judge Marilyn Go. He is also Chair of the Restaurant and Hospitality Law Committee of the Association of the Bar of the City of New York.

Laura Rodríguez received her J.D. degree in May 2013 from Fordham University School of Law where she was a Stein Scholar for the Public Interest and the 2013 Public Service Valedictorian. Ms. Rodríguez worked for Berke-Weiss & Pechman LLP before beginning as an associate at Pechman Law Group PLLC. Ms. Rodríguez has been actively involved in the litigation of over sixty wage and hour cases, including individual, collective, and Rule 23 class actions. She has independently conducted and defended depositions, attended Court conferences, and settled single, multi-plaintiff, and class and collective wage and hour actions. Ms. Rodríguez is a native Spanish speaker, which is the Plaintiff's first language.

## VII. Itemized List of Costs to be Paid by Plaintiff

| Costs | Cost |
|---|---|
| Filing Fee of Complaint | $400.00 |
| Service of Summons and Complaint on Defendants | $128.40 |
| EDNY Mediation (cost for first 4 hours) | $300.00 |
| Mediation fees (cost for subsequent 4.5 hours) | $562.50 |
| Total Costs: | $1,390.90 |

## VIII. Retention of Jurisdiction

In light of the ten-month payout in the Agreement, the Parties respectfully request that the Court retain jurisdiction over this matter for purposes of enforcement of the Agreement. The Parties agree that in doing so, the Court will help ensure compliance with their respective obligations under the Agreement.

## CONCLUSION

For all the foregoing reasons, the Parties respectfully request that their Joint Motion for Approval of the Settlement be granted. All Parties agree that the settlement in this case is fair and reasonable and should be approved by the Court. The Parties also respectfully request that the Court retain jurisdiction over this matter for purposes of enforcing the terms of the Agreement in the event of default.

We thank the Court for its time and consideration of this matter.

Respectfully submitted,

Laura Rodríguez

cc: Counsel for Defendants (via ECF)

Enclosures